Mr. Adam, good afternoon. Good afternoon to you, Your Honor. My name is Sam Adam, and I represent the claimant, Patel Adams, in this case. The facts in this case are quite simple. The trooper testified that at about 1.45, quarter of two in the morning of August 7th, 2011, he was patrolling I-80. He saw the defendant, I should say the claimant, drift over towards the center line for two seconds, come back. At that point he stopped him, he asked for identification. The claimant produced a driver's license, a rental agreement for the car. The officer testified that everything he showed him checked out. He went on the computer. The officer carried him in his car, had him in his car. Everything matched what the defendant told him with respect to his identification and so forth. Everything checked out. He wrote a warning ticket for drifting over to the center line, and at that point gave him the warning ticket, and then he asked the claimant if he could search the car. According to the officer, and this is the only testimony we have in the record, the defendant said you can search the car. He went into the Nissan and he found a package in the driver's side on the passenger side. He opened it up, found a large sum of money. He then seized the money, searched the, there was some kind of a search, the record is not really clear on what kind of a search there was of the Nissan at the scene. Nothing was discovered of any significance at all except for the money. He then placed the claimant in custody, arrested him in effect, took him to the station, held him there for about two hours, at which time a dog arrived, another officer. The money was submitted to the dog, the dog reacted to the money. The Nissan was again searched, no drugs were ever found anywhere in this case. About four hours later, which would make it a total of five to six hours, the defendant was released. The officer kept the money. When the case came on before Judge Ricuclio, we made a motion to suppress evidence in this case, saying that there was no right to arrest him, no right to take him in custody, no right to seize the money. The judge refused to hear the motion to suppress, said it was inappropriate, and that's a quote, inappropriate to file a motion to suppress, hear a motion to suppress unless it's a criminal case. Fourth Amendment does not apply, she said, to the seizure in anything other than a criminal case. Well, didn't the arrest come after the consensual search? I'm sorry, sir? The arrest came after the consensual search, right? Yes. And so the money was already found. Well, our contention is that he arrested him after he found the money, yes, and took him to the station. He was in custody, the officer testified he was in custody. He took him in custody, took him to the station. It's our contention that the court committed a clear error in not allowing us to have a motion to suppress. Almost 50 years ago, 1965, the Supreme Court of the United States held that a motion to suppress on Fourth Amendment grounds can be litigated in a forfeiture proceeding, no criminal case at all. And ever since then, every case has followed that, of course. That 1958 Plymouth vehicle held clearly the defendant is entitled to make a motion to suppress, which the judge said was inappropriate. Now, recently, in 2012, the court has again, Supreme Court of the United States, has again, United States v. Jones, reaffirmed that position. Clearly, the court held that the Fourth Amendment word effects applies to a seizure of a vehicle. Then in 2013, just two months ago, we had a case from the first district, and we filed a motion in this case to supplement the record, file an additional authority, which is people versus $280,020. In that case, which we think is exactly on point to this case, in that case, the police officers received information that the defendant paid for a railroad ticket in cash to go from Chicago to Seattle. And they approached the defendant on the train station and asked him, could we search your luggage? The defendant, there's a dispute in that case as to what the defendant said, but at any rate, the police officer testified the defendant consented, he searched the luggage, and he seized the money. Different from this case, however, is he didn't arrest the defendant. He just seized the money. And when the case got to the trial court, ultimately the trial court granted the motion to suppress evidence. And then the state appealed that motion to suppress evidence. Now, the appellate court held that the trial judge was correct in sustaining the motion to suppress, and again, cited the very cases I've cited to your honors, 1958, Plymouth, and so forth, cited those cases and said that there was no probable cause to seize the money. Merely having a large sum of money, and in that case it was over $200,000, merely having a large amount of money is not probable cause to seize the money. And as I said, they didn't even arrest the defendant in that case. In this case, they not only seized the money, but they arrested the defendant and took him to the police station. So we contend that that case is almost exactly on point. And this was before the dog was called. Yes. By statute, drug money has become contraband, right? Right. If it's drug money, yes. If the police go out and admittedly violate somebody's court, make an illegal search, and they come up with hand grenades, they'll throw the search out? Do they got to give the defendant his hand grenades back? No, no, no, of course not. Because that's contraband. That's contraband. And what if they find stolen money? They find out this stuff was stolen over at John's, wherever. Illegal search, they came back, they suppressed the evidence, but do they got to give the defendant the money he stole? I would say your honor is correct, no. No. Because it's contraband. What you have to prove is contraband. And in order to seize money under the drug statute, you have to prove the money is somehow, there's a nexus between the money and the drugs. And so isn't that the ultimate question as to whether the state, isn't that really the bottom line in this case, is whether the state proved that it was in fact contraband and drug money. But if the motion to suppress had been granted, they wouldn't have been able to introduce the evidence, including the money. Well, would the same be true of the hand grenades or the stolen money? I would think so. It would be suppressed. In other words, we got this package, and if we suppress it, we don't get to what it is, and he gets it back. No, that's a different question, whether he gets it back or not. But I think that the question is, would it be suppressed? Could they prove that he, in fact, possessed the hand grenades, your honor? Well, how would they prove it if they suppressed the package? They wouldn't be able to prove it. If they suppress the evidence, because of the search, you would never get there. Let's say in the case of stolen money, it's got a sack, turns out it was stolen. But if they suppress the evidence… But they still have to prove this contraband. And if it had been suppressed, it wouldn't be as it was in the $200,000 case. In that very case, the money is, in fact, suppressed. It can't use the money. Now, if it's contraband, as you said, hand grenades are a very good example. You don't have to return it to him, just like if it was narcotics. Suppose there was a kilo of cocaine in the car. You could suppress it. You couldn't prosecute him for it if it's suppressed, but you don't return the cocaine to him. And that, with all due deference to Justice Smith, that's the distinction. Thank you, sir. Can I focus on the difference between the basis for the motion to suppress and the basis for your request for the return of the property? The basis for the motion to suppress was… The basis was, well, there were more than one basis. The basis was that he claimed that he was illegally arrested. That would have been a factual question for the court. But he was arrested after. No, no, no. Even when he stopped, he would have claimed that he didn't have a right to stop. He would have claimed that he didn't have a right after he wrote the ticket. And that was over, and the traffic offense had been completed, and the paperwork was done. They didn't have a right to ask him for the consent. That would have been his… The next contention would be the seizure of the money, merely being money, was illegal. They had no right to seize the money. Because money, no matter what the amount of money is, it's not a crime to possess money. You're not challenging whether the consent was valid? Well, I don't know if he would have or not. He might have contested the consent, too. Was there a motion to suppress actually filed?  Was that consent challenged in the motion to suppress? I believe it was, yes. I believe so. I'll check, I'll check. In deference to Justice Schmidt's questions, you don't necessarily, the state's burden is not to prove that it's contraband. The state's burden is only to show a nexus between drugs and the money. They have to show a nexus.  Well, we contend there was not a showing, even without being suppressed. We contend there was no showing of a nexus between the money and the statute that prohibits drug money. You talk about probable cause out the road. What about, somebody's got roughly $150,000 in small bills, and the only testimony is he got consent to search. Now, for a reasonable, articulable suspicion, this is not your ordinary, everyday satchel filled with $150,000 in small bills. And to a reasonable, articulable suspicion to warrant a little further investigation. Not, you know, for the policeman to say, oh, huh, well, have a good day. And so do you need a probable cause at that point, or do you just need a reasonable, articulable suspicion to say, we need to do a little more investigation. Why don't you come on down to the police station? Well, I think what they might have done, I don't contend, I don't know. What they might have done is seize the money, give them a receipt, and tell them to go on about your business. We know there's no drugs in the car because we searched it. We know there's nothing, no drugs involved. So what they might have done is given them a receipt and told them to go about his business. But the Supreme Court has held, as we all know, that you can't just arrest somebody, search his luggage, and then wait for a dog for two hours in the middle of the night. Was the policeman's testimony that he arrested him? Yes, he said he took him in custody. Yes, yes, yes, he did. That's very clear in the record. They took him in custody at the scene, and then transported him, and then they held him, and then they questioned him. And he made answers to all their questions, not incriminating answers, but answers. What about a Terry tax? Wouldn't that be okay under Terry? Well, Terry, we have a statute in Illinois that says a Terry stop requires that the questioning take place at the place of the stop. This is miles away. But as I say, the question is then how long can you hold a man in the middle of the night in the station while you wait two hours for a dog, and then another two or three hours while you investigate the story he told you, you know, as to where he was going and why he was going there and so forth. That's the question. Those are the answers that he made, which were relied upon by the trial court in finding that the forfeiture was supportable here. Now, had there been a motion to suppress, as I said, the dog sniff would have been suppressed, I think, because the Supreme Court of the United States in the place case held you can't hold luggage longer than 90 minutes in order to submit it to a dog. Well, except you would agree they could have taken this money and given him a receipt and sent him on his way, and gone down there and brought a dog in two days later. Well, I don't know that they could have. I said they might have. But at least the defendant would not have been inconvenienced the way he was here. That might have been his fault. I hope your honors don't take that as a waiver of the point. But that is a point that they could have done. They might have taken the money, given him a receipt, and told him to go about his business. But the point is that they questioned him for five hours and then used the answers that he gave, which were not incriminating. Don't misunderstand me. They were not incriminating answers, but the answers that he gave were part of the forfeiture proceeding. Because he said he was going to see his grandmother and he didn't give her the address and so forth. He said the reason I'm traveling by car and not by plane is because I like the scenery. Things like that. And the judge didn't believe those answers as being sufficient answers to nullify the forfeiture proceeding. The bottom line is that the successful suppression was Ed. Okay. The state has nothing to go forward on forfeiture other than possession of a large amount of money? That's our position. Exactly. Which is not a crime. One minute. Thank you. Well, it's our position that the trial judge relied upon three things. One is I-80. It was on I-80. Two, the dog sniff. Three, the answers that he gave. It's our position that I-80 we can't contest. Naturally, they could show he was on I-80. But the other two, the dog sniff as well as the answers that he gave would have been suppressed. That's our position. But my final point is, which is my first point, is the defendant had a right to make a record here. The trial judge said he had no right to make a record. He couldn't make a motion to suppress. It was inappropriate, she said, in a non-criminal case. And we have a right to make a record, I think, if nothing else. We had a right to make a record so that this court could see what the evidence was and perhaps a higher court. We had a right to make that record, and she would not allow us to do that. And with all due deference, we ask that, Your Honor, in this case, the money was not subject to forfeiture. Although, of course, I guess it's hypothetical. But I'm guessing your client probably wouldn't have testified at that motion to suppress hearing either. I don't know. But we don't know. I don't know. I can't answer Your Honor's question. Thank you. Thank you. Thank you. Thank you, Your Honor. Ms. Kelly, when you're ready. May it please the court, counsel. I think the facts in the procedural history of this case are a little bit different than what we've just heard. The defendant filed a motion to suppress, and the defendant saw the hearing on his motion to suppress. And in the defendant's motion to suppress, he alleged that the stop of the vehicle was no good because it was a momentary crossing over of the lane divider with two tires. And then he also alleged that the officer, at the conclusion of the traffic stop, when you gave him the warning ticket and the traffic stop was over, could not ask for consent. That was the basis on which he sought a hearing on a motion to suppress, and that's what was denied. On appeal now, the defendant has asked that much more should be considered as part of his motion to suppress. That was not part of the motion to suppress, either in writing, I believe, or at the time it was argued to the court. That's why the people took the position that they did, that even though we don't have a complete record because there was no actual hearing on the motion to suppress, there's enough evidence there to show that under Hackett, the traffic stop was proper because he did deviate from his lane of traffic. And additionally, there are plenty of cases which say that at the conclusion of the traffic stop, the officer can ask for consent to search. And that's what happened here, and he was given consent to search, and then he found the backpack. The backpack contained a lot of money, rolled up in small bundles and rubber banded together in different denominations, a lot of money. The officer had asked the defendant, or claimant, a number of questions while he was processing the warning ticket. That's when he ascertained that the claimant was driving to Denver to visit his grandmother in a nursing home. He did not know the name of the nursing home, he didn't know the address of the nursing home, but that's what he was doing. So the warning ticket was issued contemporaneous with this questioning? No, this questioning was going on while the warning ticket was being prepared, while he was checking. In other words, he had asked the claimant to accompany him to the car while he checked his license and the rental agreement for the vehicle. While he was doing all of that, he was also asking where you're coming from, where you're going to, and that's what came out there. And then when he looked in the backpack and saw all of these small bills rolled up into a number of bundles, rubber banded bundles, and he asked the claimant about it, and the claimant said that he thought there was $1,000 to $2,000 in there. He said, well, no, I think it's more than that. That questioning all occurred at the scene. And then at that point, the officer did take both the car, the claimant, and the money down to the police station. There was some other information that came out that the state did use as additional evidence with regard to the nexus, which was what his financial condition was and whether he didn't like banks and, in fact, had bank accounts. That information did come out later. Of course, the court was never asked to rule on that part, anything at all. The only motion to suppress that was raised in front of the judge was with regard to the traffic stop and the questioning immediately following the traffic stop, the legality of asking for consent. So there was certainly at the time that the officer took all three things down to the police station, a lot more information than what we just heard. A lot of that had come out during the questioning while he was waiting for the information on the criminal history, et cetera, to come back. So therefore, a lot of the argument that we're hearing now that he raised on appeal was never presented to the trial judge. We don't have a completely developed record on it for that reason, because all that he was seeking was a motion to suppress with regard to the traffic stop and the propriety of asking questions that elicited the voluntary consent. The statute says, you know, to seize this money, it's got to be drug money. Not just criminal money, not any criminal money. It's got to be drug money, right? Yes, the statute under which this was thought to be forfeited was drug, yes. I mean, so if he was a hit man and got paid in small bills for murdering somebody, the statute doesn't allow him to take that money, right? His statute doesn't. Yeah, and I mean, so the connection as far as this, certainly this money raised eyebrows, but what's the connection between this money and drugs? Even assuming no motion to suppress, I mean, the idea of, you know, if you were going from Chicago to Denver and you weren't taking I-80, somebody might say, what the hell's wrong with you? Why do you go on, you know, take I-80 right straight across? I mean, who wouldn't take I-80 from Chicago to Colorado? And so the idea that you're on I-80 is somehow drug money because drug runners use I-80 just like everybody else does. It's going east and west across the north central part of the country. I think what was more concerning to the officer was the fact that he didn't know the name of the nursing home or where it was located in Denver. Well, that certainly shows it's dirty money. You know, there's something wrong with this money. And then he asked what he said. Well, at that point he didn't know about the money. At the time he's asking about where he's going. The officer doesn't know what's in the backpack. I believe he said he saw the backpack on the seat. Anybody traveling might have a backpack with them. He was just asking where you're going, what are you doing, that type of general questioning which often goes on. So maybe he spends some stolen iPhones. It's a big market out there. I'm just trying to figure out where's the drug connection? We just assume because there's a lot of drug traffic, but there's also a lot of other nefarious conduct that people pay stuff for in small bills. And I'm just wondering how do we tie this money to put a nexus between this money and drugs as opposed to any other illegal conduct? Well, I think the officer, in the officer's experience, the idea that it was bundled with rubber bands in small denominations or in every denomination really. If you go to a bank to get money, they're not going to roll it up and put it in rubber bands. In his experience, that was perhaps how drug dealers carried money. And additionally, then, he sought to either confirm or dispel his suspicion by taking it to the location where they could submit it to a drug-specific drug to see if the – and as you say, in this case, the – I suppose the money could have been taken and received and then searched at that time and then returned if it wasn't derivative contraband. And if you went to Chicago or probably any other city in the country and gathered up $150,000 in small bills and put a dog on it, what do you think the chances are that the dog wouldn't alert? I believe the Seventh Circuit has told us that the dog will not alert, that that's – that the – whatever – I forget what the name of the doctrine is called, the Detamination of Currency Doctrine, that they have dispelled that by saying that, in fact, the – what the dog alerts to is the odor, which does dissipate fairly quickly after the money has been exposed to drugs. So that the fact that your wallet – in fact, when the officer was questioned about how he trained the dog, he said he would sometimes just take the money out of his wallet and see if the dog would alert, and the dog didn't. So I believe the Seventh Circuit has put to rest the idea that all of our money is contaminated and the dog is going to alert on anybody's money all the time. To the extent that the Seventh Circuit can put anything to rest. Okay. I understand. But how did they do that? Pardon me? How did the Seventh Circuit do that? I didn't realize. I know Posner is, you know, master of all sciences. That's exactly how they did it. Did they go into a lab somewhere and do controlled testing? I don't remember what the scientific – but it did use the word, you know, with scientific studies and experiments. But when we focus on how this sniff was done, the dog sniffed three boxes. That's correct. First he sniffed three empty boxes. Yeah, he wasn't sniffing currency. It was – No, first he sniffed three empty boxes, and then the dog and the trainer turned away or at some point went out looking when Kasper put these currency into one of the three boxes, and then the dog sniffed all those three boxes again, and at the third box, which did in fact contain the currency, he alerted to a narcotic order. Now this is a civil proceeding. That's correct. Okay. So the state, you would say, has put on a case. They've met their burden, right? Yes. And so what happens if no response or reply is given? If no response or reply is given, the trial fact can draw an adverse inference from that. There's no Fifth Amendment privilege in this case, and the fact that he did not present an innocent owner defense can be held against him, and the judge in fact stated that one of the bases that went into her determination that there was a sufficient excess was that he did not present an innocent owner explanation for having money, and that's a proper consideration in this case. Well, in a civil – I mean, there's still – you still – you don't have to testify in a civil case, but your silence then, like a criminal, can be used against you. In other words – You can. You have a right not to testify even in a civil case. Yes. And you can even take the Fifth if you want to get up there and do that. But if you do it, usually the jury is instructed if you get up and take the Fifth that they can assume you're taking the Fifth. Any answers you would give would not be favorable to your case. The judge was aware that she could take an adverse inference, and she did. The burden does shift, in fact. So our burden – or our standard of abuse manifests away. That's correct. And so you would articulate the evidence with supporting the finding? Yes, supporting and – And the adverse inference would also be part of that. Yes, it is, and she did mention that as one of her reasons, and that is proper to consider as part of the finding of the nexus. And the people don't have to prove that the nexus actually exists, just that it's reasonable grounds to believe that there is a nexus. More likely than not. It's a civil standard. Yes, yes, it is. The probability is a substantial chance of a nexus. Could we revisit the issue of the motion to suppress that Judge Reculia did not hear? If we assume that she should have heard it on the merits, what do we do with that now? Do we reach the merits? I think you'd have to go back. We demand it for her to reach the merits? I think you would have to because I don't think in the first instance this Court ever wants to reach the merits when it wasn't developed – when the defendant, in fact, was prevented from developing it for the purpose he wanted it developed for. And then that brings us to the point that Justice Schmitt made, and that is even if it was suppressed for purposes – if it was suppressed, would it have affected the outcome of this forfeiture proceeding? Well, there's different stages that the claimant is now saying should have been suppressed. The actual seizure – The motion is filed. The motion is filed. No, I think the motion is filed for the reasons that the people stated here. Assuming the traffic stop was good and the consent was voluntary, the seizure of the money was okay. There was no issue or question raised below about the detention or the length of detention or that he was subject to arrest or anything like that. Okay, so you're suggesting that we should not reach the merits of that. So my suggestion is if you find that he was improperly denied his right to a hearing on a motion to suppress, that it would go back for a hearing on a motion to suppress. And what happens with the forfeiture proceeding? Well, I think it would be – well, I think – do I ever want to say that it could be reversed and then remanded for a hearing on a motion to suppress and a new hearing? Or it could be remanded just for the purpose of a motion to suppress, and then depending on the outcome, if the motion to suppress was granted, then it would be a case which procedurally is more in line with the most recent First District case. But it sounds like you're asking us to retain jurisdiction to determine the outcome of the motion to suppress. I think you could, because I think the motion to suppress, especially if the claimant renews it and expands it, could have different rulings on different portions of it. Different items could be – motion to suppress could be denied, but perhaps the statements he made later during his detention would be kept out. But there would still be, I would say, enough of an excess in this court than having retained jurisdiction review without that evidence, without the evidence with regard to the bank accounts and his job. That's pretty much what came out when I spoke with him later. Thank you. Thank you. Counsel, anything further in rebuttal? Oh, I'm sorry. I just wanted to add two points. One is to answer Justice Smith's question. We made a motion to suppress the original consent. You asked me that question. I didn't know the answer. I looked it up just a moment ago. And yes, the motion to suppress includes the original consent that the officer testified he made while he was in the car. So I hope that answers your question. The second point that I wanted to make clear was there are many cases that hold, and we cited them in our brief, that a mere dog sniff alone is not sufficient to forfeit money. It's not sufficient. And the reason is exactly what Your Honor pointed out, that if we all took some money out of our pocket now and put it in a bundle, what are the chances that the dog wouldn't react to it? And that's what the case law says. Cocaine is so prevalent in our society today, unfortunately, that all money contains some trace of it. And by the way, the $150,000 in this case was seized in small bills. If only one bill, one $5 bill had a trace of cocaine, the dog would have reacted. So we don't know if the $150,000 is even that nexus. Well, you don't know if it wasn't the rubber band. That's correct, Your Honor. But then the question becomes, assuming if you get past the motion to suppress, then the question becomes, and I think you pointed this out in the brief, is did the state basically make a prima facie case in their case to get them to the point where it shifted the burden to you to get up and say something, judge, that ain't drug money, never used drug money, don't know anything about drugs, you know what I'm saying, because if they made a prima facie case, if you get past, nobody responded to it. Well, I don't think they made a prima facie case. Even if the motion to suppress was properly denied, that is to say the right to make it was denied, even then I don't think that they made a prima facie case. As Your Honor suggested in your questioning of the appellee, the statute requires a nexus between drugs. It could have been, as you say, a hit man. It could have been some other illegal activity. That would not be sufficient under the statute. There has to be a connection. Your client's not a hit man, is he? I hope not. But in this case, where's the connection, except for the dog sniff, the dog's reaction, and that's not sufficient under the case law. Well, can't there be a nexus in terms of an officer's testimony, a testament practice in the drug trade? That could be. I mean, there are other things. There are other things, yes. The thing really that seemed to impress Her Honor the most in this case was the fact that she did not believe the statements that the by car all the way to Denver and so forth. She apparently just disregarded it, just said, I don't believe. And it was for that reason, more than any other reason, I think, that she entered her order here. But as I suggested to Your Honor before, I think if the order was improper, and it certainly was improper, in a respectful judgment, that we were denied an opportunity to make a record on a motion. I have the same question of you that I asked of Ms. Kelly, and that is, what is the remedy you want from this court? Assuming that you were denied a fair hearing on a motion to suppress, do you want it remanded so Judge Reculia will decide that motion to suppress? Well, I would like an order from this court that there was no nexus shown sufficient, even by a preponderance of the evidence, and the money should be returned. But failing that, I would ask that Your Honor remand the case for a full evidentiary hearing on the motion to suppress. Well, let's just assume for the sake of argument we're going to remand for a new hearing on the motion to suppress. Then are you hoping for a new Biden forfeiture hearing? Do you want the judge to consider that a new? If the motion to suppress is granted, I certainly would, yes. If it's granted, absolutely. Well, if you get a do-over, do you want a do-over of one or both? Both. If there's a do-over. But first I would ask that Your Honor's rule that the forfeiture was not sustainable as ruled by the court. And assuming we agree with you on that point, then you're not asking us to remand for a hearing on your motion to suppress. Assuming you agree with me on that point, it won't be necessary. All right. Any other questions? Thank you, Your Honor. We will be taking the matter under advisement, and we will be also taking a short recess for a panel change.